UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Lakita Smith, individually and on behalf of all others similarly situated, | 1:22-cv-01529 |
| Plaintiff, | |
| - against - | Class Action Complaint |
| General Mills Sales, Inc., | Jury Trial Demanded |
| Defendant | |

Plaintiff alleges upon information and belief, except for allegations pertaining to Plaintiff, which are based on personal knowledge:

1. General Mills Sales, Inc. ("Defendant") manufactures, labels, markets, and sells frozen cheese pizza rolls under the Totino's brand ("Product").



2. The representations include "Cheese," "Totino's Pizza Rolls Brand Pizza Snacks," "Pizza In A Golden Crust," "Naturally Flavored," pictures of the pizza rolls, with the visible contents of what appears to be red tomato sauce and white cheese, in yellow, red and orange packaging.

3. The representations cause consumers to expect the Product contains a non-de minimis amount of ingredients associated with pizza, such as cheese.

4. However, the representations are false, deceptive, and misleading, because the cheese used is almost entirely imitation cheese instead of traditional cheese.

**I.  PIZZA**

5. All definitions of pizza include bread, tomato sauce, and cheese.

6. Macmillan Dictionary defines pizza as a "a food that consists of flat round bread with tomato, cheese, vegetables, meat etc."

7. Collins Dictionary defines pizza as "dough covered with tomatoes, cheese, and other toppings, and then baked in an oven.

8. Cambridge Dictionary defines pizza as a "a large circle of flat bread baked with cheese, tomatoes, and sometimes meat and vegetables spread on top:

9. Merriam-Webster defines pizza as a "a dish made typically of flattened bread dough spread with a savory mixture usually including tomatoes and cheese and often other toppings and baked."

10. The Product is identified as "Pizza In A Golden Crust," which means that instead of having the pizza components on top of bread, it is enclosed within the bread.

11. Government agencies define pizza as the class of products that have been traditionally formulated with tomato sauce and cheese on a bread-based crust.

12. A food like pizza, without a "standard of identity," is required by federal and identical state regulations to be labeled with a "common or usual name." 21 C.F.R. § 102.5(a).

13. A common or usual name must "identify or describe, in as simple and direct terms as possible, the basic nature of the food or its characterizing properties or ingredients." 21 C.F.R. § 102.5(a).

14. Where the characterizing ingredient (1) has a material bearing on the food's price or its acceptance by consumers or (2) creates an erroneous impression it is present in a greater amount than it is, the common or usual name is required to include its percentage. 21 C.F.R. § 102.5(b).

15. Cheese is valued by consumers because it is a natural food, made from milk.

16. In contrast, imitation or analog cheese is made by combining vegetable oils, corn starch and casein, instead of milk solids.

17. These ingredients are highly processed with added chemicals and preservatives.

18. Since ancient times, milk has been an essential part of the human diet and nutrition.

19. Milk and dairy products are reservoirs of energy, because they contain a range of proteins, carbohydrates, lipids, minerals, and vitamins.

20. Imitation cheese has unhealthy fats and lacks the nutrients found in real cheese.

21. In contrast to the supple texture of real cheese, imitation cheese has a rubbery texture.

22. Real cheese gets its taste from hundreds of lactones, or flavor compounds, compared to the bland taste of imitation cheese.

## II. REPRESENTATIONS ARE MISLEADING

23. The representations, including "Cheese," "Pizza Rolls," and "Pizza In A Golden Crust," are misleading because the characterizing cheese ingredient is replaced with imitation cheese.

> Ingredients: Enriched Flour (wheat flour, niacin, ferrous sulfate, thiamin mononitrate, riboflavin, folic acid), Tomato Puree (water, tomato paste), Imitation Mozzarella Cheese (water, palm oil, modified corn starch, vegetable oil [soybean, high oleic soybean and/or canola oil], rennet casein, salt, sodium aluminum phosphate, potassium chloride, citric acid, guar gum, potassium sorbate [preservative], sodium citrate, sodium phosphate, titanium dioxide [artificial color]), Water, Vegetable Oil (soybean, high oleic soybean and/or canola oil). Contains less than 2% of: Rehydrated Fat Free Mozzarella Cheese (water, skim milk, cheese cultures, salt, enzymes, citric acid), Sugar, Modified Corn Starch, Salt, Modified Whey, Defatted Soy Flour, Spice, Methylcellulose, Modified Tapioca Starch, Onion Powder, Dextrose, Rehydrated Enzyme Modified Cheese (water, milk, cheese cultures, salt, enzymes), Maltodextrin, TBHQ (preservative), Natural Flavor.

**Ingredients: Enriched Flour** (wheat flour, niacin, ferrous sulfate, thiamin mononitrate, riboflavin, folic acid), **Tomato Puree** (water, tomato paste), **Imitation Mozzarella Cheese** (water, palm oil, modified corn starch, vegetable oil [soybean, high oleic soybean and/or canola oil], rennet casein, salt, sodium aluminum phosphate, potassium chloride, citric acid, guar gum, potassium sorbate [preservative], sodium citrate, sodium phosphate, titanium dioxide [artificial color]), **Vegetable Oil** (soybean, high oleic soybean and/or canola oil). **Contains less than 2% of:** Rehydrated Fat Free Mozzarella Cheese (water, skim milk, cheese cultures, salt, enzymes, citric acid), Sugar, Modified Corn Starch, Salt, Modified Whey, Defatted Soy Flour, Spice, Methylcellulose, Onion Powder, Dextrose, Rehydrated Enzyme Modified Cheese (water, milk, cheese cultures, salt, enzymes), Maltodextrin, TBHQ (preservative), Natural Flavor.

24. This is shown through the ingredients, listing "Imitation Mozzarella Cheese" as the third most predominant ingredient after flour and tomato paste.

25. Instead of being made from milk, the components of this ingredient are:

4

> water, palm oil, modified corn starch, vegetable oil [soybean, high oleic soybean and/or canola oil], rennet casein, salt, sodium aluminum phosphate, potassium chloride, citric acid, guar gum, potassium sorbate [preservative], sodium citrate, sodium phosphate, titanium dioxide [artificial color].

26. The Product "[C]ontains less than 2% [of:] Rehydrated Fat Free Mozzarella Cheese [and]…Rehydrated Enzyme Modified Cheese," or cheese made from dairy ingredients.

27. The representations are misleading because the Product's common or usual name, "Pizza In A Golden Crust," does not include the percentage of the characterizing cheese ingredient. 21 C.F.R. § 102.5(b).

28. Federal and identical state regulations require that beneath "Pizza In A Golden Crust," the percentage of the characterizing cheese ingredient is disclosed in the following manner: "Contains ____ % Cheese." 21 C.F.R. § 102.5(b)(2).

29. The blank is required to be filled in with the percentage expressed as a whole number not greater than the actual percentage of the ingredient.

30. For example, if the combined amount of rehydrated fat free mozzarella cheese and rehydrated enzyme modified cheese is two percent, the label would state "Contains 2 % Cheese."

31. The small relative and absolute amount of cheese and its replacement with imitation cheese is misleading in light of the Product's name and cheese representations.

32. Though Defendant attempts to disclaim the presence of cheese through the statement, "Naturally Flavored," this is insufficient to overcome the misleading common or usual name.

33. The amount of actual cheese is more significant than whether the Product contains "natural flavor," the last ingredient listed.

34. The Product's "natural flavor" is used to simulate the flavor of cheese, even though the relevant regulations prohibit the use of flavors to simulate the flavor of any variety of cheese.

5

21 C.F.R. § 133.193(a).

35. If a manufacturer could add "cheese flavor" to cheese, it would be too easy to reduce the amount of cheese but mislead consumers to think a product contains more cheese than it does.

### III. CONSUMERS ARE MISLED BY OMISSION OF IMITATION CHEESE ON FRONT LABEL

36. The replacement of traditional cheese with imitation cheese causes consumers to receive a nutritionally inferior food.

37. Consumers are misled because the front label fails to disclose – as required by law – that the purported mozzarella cheese blend is an imitation because "it [the cheese blend] is a substitute for and resembles another food [mozzarella cheese] but is nutritionally inferior to that food." 21 C.F.R. § 101.3(e)(1).

38. The use of vegetable oils and corn starch instead of milk permit a reduction in milkfat content, resulting in at least two percent less of the daily recommended value ("DRV") of protein, among other nutrients. 21 C.F.R. § 101.3(e)(4)(ii) ("Nutritional inferiority").

39. Consumers are misled because the front label fails to identify the "mozzarella cheese" as an "imitation" on the front label.

40. The result of substituting vegetable oils for milk in cheese is a Product which lacks the nutritional, organoleptic, and sensory attributes of traditional cheese.

### IV. CONCLUSION

41. Defendant makes other representations and omissions with respect to the Product which are false and misleading.

42. Reasonable consumers must and do rely on a company to honestly and lawfully market and describe the components, attributes, and features of a product, relative to itself and other comparable products or alternatives.

43. The value of the Product that Plaintiff purchased was materially less than its value as represented by Defendant.

44. Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

45. Had Plaintiff and proposed class members known the truth, they would not have bought the Product or would have paid less for it.

46. As a result of the false and misleading representations, the Product is sold at a premium price, approximately no less than no less than $3.99 per 7.5 OZ, excluding tax and sales, higher than similar products, represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions.

## Jurisdiction and Venue

47. Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

48. The aggregate amount in controversy exceeds $5 million, including any statutory damages, exclusive of interest and costs.

49. Plaintiff Lakita Smith is a citizen of Illinois.

50. Defendant General Mills Sales, Inc. is a Delaware corporation with a principal place of business in Minneapolis, Hennepin County, Minnesota.

51. The class of persons Plaintiff seeks to represent includes persons who are citizens of different states from which Defendant is a citizen

52. The members of the class Plaintiff seeks to represent are more than 100, because the Product has been sold for several years, with the representations described here, in thousands of locations, in the states covered by Plaintiff's proposed classes.

53. The Product is available to consumers from third-parties, which includes grocery stores, dollar stores, warehouse club stores, drug stores, convenience stores, big box stores, and online.

54. Venue is in the Eastern Division in this District because a substantial part of the events or omissions giving rise to these claims occurred in Cook, including Plaintiff's purchase, consumption, and/or use of the Product and awareness and/or experiences of and with the issues described here.

## Parties

55. Plaintiff Lakita Smith is a citizen of Chicago, Cook, Illinois.

56. Defendant General Mills Sales, Inc. is a Delaware corporation with a principal place of business in Minneapolis, Minnesota, Hennepin County.

57. Defendant is one of the largest food companies in the world.

58. In its early years, the company's focus was on milling flour, and it was led by a military general, thus the name of "General Mills" seemed to stick.

59. During the Second World War, General Mills switched from producing foods to armaments for the military.

60. Following the war, General Mills developed numerous culinary innovations to improve the lives of Americans.

61. Totino's was the name of the Minnesota pizzeria known for using the highest quality ingredients, with no substitutes.

62. Totino's developed the most popular brand of frozen pizzas, purchased by General Mills in the 1990s.

63. Defendant has promoted the Totino's brand heavily and emphasizes its quality

ingredients in a snackable, convenient form.

64. Consumers of General Mills and Totino's products trust these companies to be honest with them, because it has built up a reservoir of good will when it comes to foods and especially pizza.

65. The Product is available to consumers from third-parties, which includes grocery stores, dollar stores, warehouse club stores, drug stores, convenience stores, big box stores, and online.

66. Plaintiff purchased the Product on one or more occasions within the statutes of limitations for each cause of action alleged, at stores including Food 4 Less, 7030 S Ashland Ave Chicago IL 60636-3948 between January 25, 2022, and January 31, 2022, and/or among other times.

67. Plaintiff believed and expected the Product the Product's cheese component was mainly traditional cheese from dairy ingredients instead of imitation cheese from vegetable oils because that is what the representations and omissions said and implied.

68. Plaintiff relied on the words, terms coloring, descriptions, layout, packaging, tags, and/or images on the Product, on the labeling, statements, omissions, claims, statements, and instructions, made by Defendant or at its directions, in digital, print and/or social media, which accompanied the Product and separately, through in-store, digital, audio, and print marketing.

69. Plaintiff bought the Product at or exceeding the above-referenced price.

70. Plaintiff would not have purchased the Product if he knew the representations and omissions were false and misleading or would have paid less for it.

71. Plaintiff chose between Defendant's Product and products represented similarly, but which did not misrepresent their attributes, requirements, instructions, features, and/or

9

components.

72. The Product was worth less than what Plaintiff paid and he would not have paid as much absent Defendant's false and misleading statements and omissions.

73. Plaintiff intends to, seeks to, and will purchase the Product again when he can do so with the assurance the Product's representations are consistent with its abilities, attributes, and/or composition.

74. Plaintiff is unable to rely on the labeling and representations not only of this Product, but other similar frozen pizza products promoted as containing cheese, because he is unsure whether those representations are truthful.

## Class Allegations

75. Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **Illinois Class:** All persons in the State of Illinois who purchased the Product during the statutes of limitations for each cause of action alleged; and
>
> **Consumer Fraud Multi-State Class**: All persons in the States of Arkansas, Iowa, Utah, Idaho, Alaska, and Montana who purchased the Product during the statutes of limitations for each cause of action alleged.

76. Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

77. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

78. Plaintiff is an adequate representative because his interests do not conflict with other members.

79. No individual inquiry is necessary since the focus is only on Defendant's practices

10

and the class is definable and ascertainable.

80. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

81. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

82. Plaintiff seeks class-wide injunctive relief because the practices continue.

Illinois Consumer Fraud and Deceptive Business Practices Act
("ICFA"), 815 ILCS 505/1, et seq.

(Consumer Protection Statute)

83. Plaintiff incorporates by reference all preceding paragraphs.

84. Plaintiff believed the Product's cheese component was mainly traditional cheese from dairy ingredients instead of imitation cheese from vegetable oils.

85. Defendant's false, misleading and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

86. Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

87. Plaintiff relied on the representations and omissions to believe the Product's cheese component was mainly traditional cheese from dairy ingredients instead of imitation cheese from vegetable oils.

88. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Violation of State Consumer Fraud Acts</u>

<u>(On Behalf of the Consumer Fraud Multi-State Class)</u>

89. The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the consumer protection statute invoked by Plaintiff and prohibit the use of unfair or deceptive business practices in the conduct of commerce.

90. The members of the Consumer Fraud Multi-State Class reserve their rights to assert their consumer protection claims under the Consumer Fraud Acts of the States they represent and/or the consumer protection statute invoked by Plaintiff.

91. Defendant intended that members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct.

92. As a result of Defendant's use of artifice, and unfair or deceptive acts or business practices, the members of the Consumer Fraud Multi-State Class sustained damages.

93. Defendant's conduct showed motive and a reckless disregard of the truth such that an award of punitive damages is appropriate.

<u>Breaches of Express Warranty,</u>
<u>Implied Warranty of Merchantability/Fitness for a Particular Purpose and</u>
<u>Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.</u>

94. The Product was manufactured, identified, marketed and sold by Defendant and expressly and impliedly warranted to Plaintiff and class members that the Product's cheese component was mainly traditional cheese from dairy ingredients instead of imitation cheese from vegetable oils.

95. Defendant directly marketed the Product to Plaintiff and consumers through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, and targeted digital advertising.

96. Defendant knew the product attributes that potential customers like Plaintiff were seeking and developed its marketing and labeling to directly meet those needs and desires.

97. Defendant's representations about the Product were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant that the Product's cheese component was mainly traditional cheese from dairy ingredients instead of imitation cheese from vegetable oils.

98. Defendant's representations affirmed and promised that the Product's cheese component was mainly traditional cheese from dairy ingredients instead of imitation cheese from vegetable oils.

99. Defendant described the Product so Plaintiff and consumers believed the Product's cheese component was mainly traditional cheese from dairy ingredients instead of imitation cheese from vegetable oils, which became part of the basis of the bargain that it would conform to its affirmations and promises.

100. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

101. This duty is based on Defendant's outsized role in the market for this type of Product, a trusted company, known for its transparent labeling, and its commitment to putting customers first.

102. Plaintiff recently became aware of Defendant's breach of the Product's warranties.

103. Plaintiff provided or will provide notice to Defendant, its agents, representatives, retailers, and their employees.

104. Plaintiff hereby provides notice to Defendant that it breached the express and implied warranties associated with the Product.

105. Defendant received notice and should have been aware of these issues due to complaints by third-parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

106. The Product did not conform to its affirmations of fact and promises due to Defendant's actions.

107. The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container or label, because it was marketed as if the Product's cheese component was mainly traditional cheese from dairy ingredients instead of imitation cheese from vegetable oils.

108. The Product was not merchantable because Defendant had reason to know the particular purpose for which the Product was bought by Plaintiff, because he expected the Product's cheese component was mainly traditional cheese from dairy ingredients instead of imitation cheese from vegetable oils, and he relied on Defendant's skill and judgment to select or furnish such a suitable product.

109. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Negligent Misrepresentation

110. Defendant had a duty to truthfully represent the Product, which it breached.

111. This duty was non-delegable, and based on Defendant's position, holding itself out as having special knowledge and experience in this area, a trusted company, known for its transparent labeling, and its commitment to putting customers first.

112. Defendant's representations and omissions regarding the Product went beyond the

specific representations on the packaging, as they incorporated the extra-labeling promises and commitments to quality, transparency and putting customers first, that it has been known for.

113. These promises were outside of the standard representations that other companies may make in a standard arms-length, retail context.

114. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in Defendant.

115. Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchase of the Product.

116. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

## Fraud

117. Defendant misrepresented and/or omitted the attributes and qualities of the Product, that the Product's cheese component was mainly traditional cheese from dairy ingredients instead of imitation cheese from vegetable oils.

118. Moreover, the records Defendant is required to maintain, and/or the information inconspicuously disclosed to consumers, provided it with actual and constructive knowledge of the falsity and deception, through statements and omissions.

119. Defendant knew of the issues described here yet did not address them.

120. Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations.

## Unjust Enrichment

121. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek

restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

   **WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing Defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary damages, statutory and/or punitive damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated: March 23, 2022

                                                               Respectfully submitted,

                                                               /s/Spencer Sheehan
                                                               Sheehan & Associates, P.C.
                                                               Spencer Sheehan
                                                                60 Cuttermill Rd Ste 412
                                                                Great Neck NY 11021
                                                                Tel: (516) 268-7080
                                                                spencer@spencersheehan.com