UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LAKITA SMITH, | |
| Plaintiff, | |
| v. | No. 22 CV 1529 |
| GENERAL MILLS SALES, INC., | Judge Manish S. Shah |
| Defendant. | |

MEMORANDUM OPINION AND ORDER

Plaintiff Lakita Smith bought Totino's Pizza Rolls at a grocery store. She says the box misrepresented the content of the Rolls and sued defendant General Mills for violating the Illinois Consumer Fraud Act. She also brought claims for breach of warranty, negligent misrepresentation, fraud, and unjust enrichment. Defendant moves to dismiss. The motion is granted.

I.   **Legal Standard**

"To survive a motion to dismiss, a plaintiff need allege 'only enough facts to state a claim to relief that is plausible on its face.'" *Barwin v. Vill. of Oak Park*, 54 F.4th 443, 453 (7th Cir. 2022) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court reviewing a Rule 12(b)(6) motion to dismiss accepts as true all well-pled facts alleged in the complaint and determines whether "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 453 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Legal assertions or recital of the elements of a cause of action supported by mere conclusory statements," however, do not receive the

presumption of truth. *Vesely v. Armslist LLC*, 762 F.3d 661, 664–65 (7th Cir. 2014) (citation and quotations omitted).

Claims of fraud or deceptive practices under the Illinois Consumer Fraud Act require the plaintiff to meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b). *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 738 (7th Cir. 2019). The plaintiff must allege the "who, what, when, where, and how" of the alleged fraud. *Id.*

## II. Facts

### A. Statutory Background and Definitions

The Food, Drug, and Cosmetic Act regulates food labeling in the United States. 21 U.S.C. §§ 301, *et seq.* It bars private rights of action, 21 U.S.C. § 337(a), and (through an amendment by the Nutrition Labeling and Education Act) preempts states from imposing regulations on food labeling that are "not identical to" the federal regulations. 21 U.S.C. § 343-1(a). The "not identical to" principle preempts state requirements that "directly or indirectly" impose obligations that aren't imposed by any federal implementing regulation or merely "differ from those specifically imposed" by the implementing regulations. 21 C.F.R. § 100.1(c)(4). But state-law claims that would not require a different label than the one required by federal regulations are not preempted. Consumers can "enforce a violation of the [Food, Drug, and Cosmetic] Act as a violation of state law." *Turek v. General Mills, Inc.*, 662 F.3d 423, 426 (7th Cir. 2011); *see also Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 581–82 (7th Cir. 2012) (Supreme Court has never suggested that "the absence of a private

2

right of action under a federal statute would prevent state law from providing a cause of action based in whole or in part on violations of the federal law").

The FDCA includes several terms of art that are central to Smith's claims: standard of identity, common or usual name, characterizing ingredient, and natural flavor. A standard of identity "specifies the defining characteristics of a given food," *Nemphos v. Nestle Waters N. Am., Inc.*, 775 F.3d 616, 621 (4th Cir. 2015), and is set by regulations issued by the Food and Drug Administration. *See* 21 U.S.C. § 341 (FDA authorized to issue "regulations fixing and establishing for any food, under its common or usual name so far as practicable, a reasonable definition and standard of identity"). "At the consumer level, a standard of identity warrants that individuals will encounter a label reflecting the food's actual contents—that consumers 'will get what they may reasonably expect to receive.'" *Nemphos*, 775 F.3d at 622 (quoting *F. Sec. Adm'r v. Quaker Oats*, 318 U.S. 218, 232 (1943)). So, for instance, bread means something specific ("produced by baking mixed yeast-leavened dough prepared from one or more of" enumerated farinaceous, moistening, and leavening-agent ingredients), as does peanut butter ("prepared by grinding…shelled and roasted peanut ingredients…to which may be added safe and suitable seasoning and stabilizing ingredients" that "do not in the aggregate exceed 10 percent of the weight of the finished food"), as does jelly ("jelled foods" made from a mixture of enumerated fruit-juice ingredients and a combination of optional ingredients). 21 C.F.R. §§ 136.110(a), 164.150 (a), 150.140(a), respectively.

3

Many foods don't have standards of identity. Those that don't must be labeled with their "common or usual name." 21 U.S.C. § 343(i). The common or usual name of a food, which can be a coined term, must "accurately identify or describe, in as simple and direct terms as possible, the basic nature of the food or its characterizing properties or ingredients." 21 C.F.R. § 102.5(a). The name must be "uniform among all identical or similar products and may not be confusingly similar to the name of any other food that is not reasonably encompassed within the same name." *Id.*

Some foods have what's called a "characterizing ingredient." Neither the statute nor regulations define "characterizing ingredient," but the regulations do offer some examples: strawberries in strawberry shortcake (21 C.F.R. § 101.22(i)(1)(i)) and peanuts in peanut butter (*see* 21 C.F.R. § 102.23(a)), for instance.[1] The percentage of a characterizing ingredient, determined by weight of the finished product, must be included on the product's label if the label would otherwise create an erroneous impression that the characterizing ingredient is "present in an amount greater than is actually the case." 21 C.F.R. §§ 102.5(b), (b)(1). So, too, when the proportion of the ingredient "has a material bearing on price or consumer acceptance." 21 C.F.R. § 102.5(b).

Finally, "natural flavor" means the essential oil, essence, or distillate, among other things, whose flavoring constituents are derived from food ingredients

---

[1] Defendant says another example of characterizing ingredients includes raisins in raisin bread and cites to 21 C.F.R. § 136.160(a)(1) in support. [18] at n.5. It's likely true that raisins are a characterizing ingredient of raisin bread (it's in the name), but section 136.160(a)(1) doesn't support that. Section 136.160(a)(1) instead creates the standard of identity for raisin bread. Just because an ingredient is required or required in a certain amount to meet a standard of identity doesn't make it a characterizing ingredient.

4

(including dairy products) and whose "significant function in food is flavoring rather than nutritional." 21 C.F.R. 101.22(a)(3).

## B. Smith's Claims

Smith bought a box of Totino's Pizza Rolls at a grocery store in Chicago. [1] ¶ 66.[2] The box looked like this, [1] ¶ 1:



The product name, "Totino's Pizza Rolls," is in the center. [1] ¶ 1. The lower left corner describes the product as "Pizza in a Golden Crust." [1] ¶ 1. Also in the lower left corner is the word "Cheese," and directly beneath it, in smaller and narrower typeface, "Naturally Flavored." [1] ¶ 1. The box shows thirteen pieces of what appear to be dough fried or baked in a pillow shape, two with steam rising off

---

[2] Bracketed numbers refer to entries on the district court docket and page numbers refer to the CM/ECF header placed at the top of filings. The facts are taken from Smith's complaint. [1]. "Pizza Rolls" is a trademarked term, so is capitalized throughout.

them. [1] ¶ 1. One of the pieces has been cut open for an inside view; it shows what appears to be cheese and tomato sauce inside the dough. [1] ¶ 1.[3]

Based on the box's words and images, Smith expected the Rolls to contain "a non-de minimis amount of ingredients associated with pizza, such as cheese." *See* [1] ¶ 3. Specifically, she expected that the cheese in the Rolls would be "mainly traditional cheese from dairy ingredients instead of imitation cheese from vegetable oils." [1] ¶ 67. But in fact, the third ingredient in the Rolls is "Imitation Mozzarella Cheese," which contains: water, palm oil, modified corn starch, vegetable oil [], rennet casein, salt, sodium aluminum phosphate, potassium chloride, citric acid, guar gum, potassium sorbate [], sodium citrate, sodium phosphate, and titanium dioxide []. [1] ¶ 23. The fourth ingredient, however, is real cheese (Rehydrated Fat Free Mozzarella Cheese). [1] ¶ 23. Rehydrated Enzyme Modified Cheese is also listed. [1] ¶ 23.

Smith claims that Totino's labeling is misleading and violates federal regulations in three ways.[4] First, the label doesn't contain the percentage of cheese in the Rolls, which is required because (Smith says) cheese is a characterizing ingredient of pizza. [1] ¶¶ 27–30 (citing 21 C.F.R. § 102.5(b)(2)); [22] at 17–18. The words "naturally flavored"—which plaintiff says is an attempt to "disclaim the

---

[3] Plaintiff submitted the above image, [1] ¶ 1, and defendant submitted an image of both the front and back of the box in its motion to dismiss, [18-1]. Because the box is referred to in the complaint and is central to plaintiff's claims, I take judicial notice of defendant's images. *See Mueller v. Apple Leisure Corp.*, 880 F.3d 890, 895 (7th Cir. 2018).

[4] Smith is not bringing a claim under the FDCA, [22] at 16, and rightfully so because the Act has no private right of action, as noted above. 21 U.S.C. § 337(a); *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 645 (7th Cir. 2019). Instead, her argument is that, because the labeling violates federal regulations, it violates the Illinois Consumer Fraud Act as well.

presence of cheese"—are insufficient to overcome the misleading impression created by omitting the percentage of cheese, she says. [1] ¶¶ 32–34. Second, Pizza Rolls's natural flavor is used to simulate the flavor of cheese, in violation of federal regulations, plaintiff says. [1] ¶ 34 (citing 21 C.F.R. § 133.193(a)). Third, by not disclosing on the front that the purported "mozzarella cheese blend" is actually an imitation cheese, defendant violates 21 C.F.R. § 101.3(e) and misleads consumers. [1] ¶¶ 37–40. I disregard plaintiff's allegation that the box says "mozzarella cheese blend" on the front because it doesn't—as is clear from the picture plaintiff herself submitted. *See* [1] ¶ 1; *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013) ("When an exhibit incontrovertibly contradicts the allegations in the complaint, the exhibit ordinarily controls, even when considering a motion to dismiss.").[5] Instead, I read the allegation to be that, by failing to disclose on the front of the box that the "cheese" includes imitation cheese, defendant violated federal regulations.

Smith says she wouldn't have bought the Pizza Rolls, or would have paid less for them, if she'd known they weren't made primarily from "traditional cheese" and had imitation cheese in them. *See* [1] ¶ 70. She says she plans to buy the Pizza Rolls again, but only when she can be assured that the labeling isn't misleading. [1] ¶ 73. Because of her experience with Totino's, she's unable to rely on the labeling and

---

[5] Plaintiff's counsel may have accidentally copied an allegation from a complaint in another case. *Compare* [1] ¶ 39, *with* [1] ¶ 49 *in Jackson v. Kraft Heinz Foods Co.*, 21-cv-5219, 2022 WL 4591749 (N.D. Ill. Aug. 3, 2022). Perhaps for the same reason, the complaint uses he/him pronouns for Smith, but the response to defendant's motion to dismiss uses she/her pronouns. *Compare* [1] ¶¶ 70, 72–74, *with* [22] at 8, 11, 19–21.

representations of other frozen pizza products because she's not sure if they're accurate. [1] ¶ 74.

### III. Analysis

Defendant argues that Totino's labeling doesn't violate the Illinois Consumer Fraud Act, [18] at 17–23, and, if it does, the ICFA claims are preempted by the FDCA, [18] at 12–17. Defendant also argues plaintiff's common-law claims should be dismissed for various reasons. [18] at 24–26.

####     A.     The Illinois Consumer Fraud Act Claim

There are two types of claims under ICFA: those based on deceptive practices and those based on unfair practices. *Benson*, 944 F.3d at 646; *Vanzant*, 934 F.3d at 738–39. In her complaint, plaintiff invokes the deceptive-conduct theory. She refers to "[d]efendant's false, misleading and deceptive representations and omissions" and says "[d]efendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions." [1] ¶¶ 85–86.

Deceptive-conduct claims are subject to a heightened pleading standard under Federal Rule of Civil Procedure 9(b). *Benson*, 944 F.3d at 646. Defendant points this out and says plaintiff hasn't met the standard because she has failed to allege the deception with requisite particularity. [18] at 18. In response, plaintiff says that she's actually bringing an unfair-conduct claim, for which fraud isn't a required element. [22] at 8–9. Despite that seeming switch, plaintiff continues to refer to deceptive conduct and misleading consumers. *See* [22] at 10. What's more, she applies deceptive-conduct standards in her analysis, including the "reasonable consumer" and "unreasonable or fanciful interpretation" standards. [22] at 10. She also relies on

8

cases that only concern deceptive conduct and don't mention unfair conduct. *See* [22] at 10 (citing, e.g., *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 474–75 (7th Cir. 2020); *Werbel ex rel. v. Pepsico, Inc.*, 2010 WL 2673860, at *3 (N.D. Cal. July 2, 2010); *McKinnis v. Kellogg USA*, 2007 WL 4766060, at **3–4 (C.D. Cal. Sep. 19, 2007); *Carrea v. Dreyer's Grand Ice Cream, Inc.*, 475 Fed. App'x 113, 115 (9th Cir. 2012); *Red v. Kraft Foods, Inc.*, 2012 WL 5504011, at *2 (Oct. 25, 2012), *order entered* Oct. 26, 2012, 2012 WL 5502359). Whichever ICFA claim she's bringing, it doesn't succeed.

1. *Deceptive-Conduct ICFA Claim*

A deceptive act is the "misrepresentation or the concealment, suppression or omission of any material fact." 815 ILCS 505/2. To state a deceptive-conduct claim under the Act, Smith must show that General Mills committed such an act "with the intent that others rely on the deception, that the act occurred in the course of trade or commerce, and that it caused actual damages." *Vanzant*, 934 F.3d at 736. As explained above, Smith must plead her deceptive-conduct ICFA claim with the detail required by Rule 9(b), including the "who, what, when, where, and how" of the fraud. *Id.* (citing *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014)).

The issue here is whether General Mills misrepresented its product—whether the product packaging was "likely to deceive reasonable consumers," and whether there was "a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Bell*, 982 F.3d at 474–75 (quoting *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 972–73 (7th Cir. 2020)). This is usually an issue of fact, *see Beardsall*, 953 F.3d at 973, but

dismissal on the pleadings may be justified when the claim is based on "unreasonable or fanciful interpretations of labels," *Bell*, 982 F.3d at 477.

The fact that the package said "Cheese" and the product contained cheese doesn't preclude a deceptive-conduct claim. That's because "even literally true claims may deceive." *Bell*, 982 F.3d at 479 (noting that federal false-advertising claims fall into two categories, literal falsity and implied falsity, and applying those categories in the ICFA context). Smith's argument is that, based on the product packaging, reasonable consumers would expect more traditional cheese than imitation cheese. [22] at 11. She says that expectation was supported by dictionary definitions and government guidelines. [22] at 11 (citing [1] ¶¶ 6–9, 11).

None of the dictionary definitions plaintiff offers defines pizza as containing a certain *amount* of traditional cheese, though. *See* [1] ¶¶ 6–9.[6] What's more, the federal regulations don't contain a standard of identity for pizza. (Smith's argument about the federal regulations is that, among other things, they require disclosing the percentage of cheese when a consumer would expect there to be more real cheese than there actually is. [1] ¶ 14. This assumes the premise that a reasonable consumer would expect more real than fake cheese.)

---

[6] MacMillan defines pizza as "a food that consists of flat round bread with tomato, cheese, vegetables, meat, etc." [1] ¶ 6. Collins defines it as "dough covered with tomatoes, cheese, and other toppings, and then baked in an oven." [1] ¶ 7. Cambridge defines it as a "large circle of flat bread baked with cheese, tomatoes, and sometimes meat and vegetables spread on top." [1] ¶ 8. Merriam-Webster defines it as a "dish made typically of flattened bread dough spread with a savory mixture usually including tomatoes and cheese and often other toppings and baked." [1] ¶ 9.

10

Even if federal regulations provided a standard of identity for pizza, and that standard required pizza to contain more real cheese than fake cheese, a reasonable consumer's expectations wouldn't necessarily align with the regulations because "average consumers are not likely to be aware of the nuances of the FDA's regulations." *Bell*, 982 F.3d at 482.

Finally, Smith hasn't adequately pled that a reasonable consumer would have that expectation based on the "Cheese Naturally Flavored" label. Other courts have said the same about other ingredients. *See, e.g.*, *Karlinski v. Costco Wholesale Corp.*, --- F. Supp. 3d ---, 2022 WL 2867383, at * 4 (N.D. Ill. July 21, 2022) (no showing that "Chocolate" label would lead a reasonable consumer to believe that cacao bean ingredients predominated over vegetable oils); *Johnston v. Kashi Sales, LLC*, --- F. Supp. 3d ---, 2022 WL 4103973, at *8–9 (S.D. Ill. Sep. 8, 2022) (reasonable consumer wouldn't expect "Made with Wildflower Honey" label to mean there was more honey than other sweeteners); *Wach v. Prairie Farms Dairy, Inc.*, 2022 WL 1591715, at *3 (N.D. Ill. May 19, 2022) (rejecting as conclusory the allegation that a reasonable consumer would expect "Premium Vanilla Ice Cream" to contain a non-negligible amount of extracts from vanilla beans); *but see Harris v. Kashi Sales, LLC*, --- F. Supp. 3d ---, 2022 WL 2390933, at **3–4 (N.D. Ill. July 1, 2022) (reasonable consumer might expect "Mixed Berry" bar to contain more berry ingredients than berry flavoring where front of package didn't say "Mixed Berry Flavor"). "Real Cheese" or "100% Cheese" might be a different story, but plaintiff hasn't explained why "Naturally Flavored" wouldn't dispel any expectation of predominantly real cheese

11

that a reasonable consumer might have. To the extent plaintiff is making a deceptive-conduct ICFA claim, it fails.

## 2. *Unfair-Conduct ICFA Claim*

Perhaps realizing that she faces an uphill battle on her deceptive-conduct claim, plaintiff says in her response brief that she's actually bringing an unfair-conduct claim, to which Rule 9(b)'s heightened pleading standard doesn't apply. [22] at 8–9; *see Vanzant*, 934 F.3d at 738. A practice is unfair under ICFA if it "offends public policy;" "is immoral, unethical, oppressive, or unscrupulous;" or "causes substantial injury to consumers." *Benson*, 944 F.3d at 647 (quoting *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 417–18 (2002)). Plaintiff focuses on the first two criteria. [22] at 9. She doesn't, however, explain how the labeling is immoral or unethical, so her only chance at an unfair-conduct claim is that the labeling violates public policy, specifically federal policy. *See* 21 U.S.C. § 343-1(a) (preempting state requirements that aren't identical to federal requirements).

Smith says Totino's violates four federal regulations. [22] at 16–18. First, General Mills failed to disclose on the front of the box the percentage of real cheese in Totino's. *See* [1] ¶¶ 27–30; [22] at 18. As noted above, the percentage of a characterizing ingredient must be included on the front of the packaging if the packaging would otherwise lead a consumer to think the product contains more of the characterizing ingredient than it does. 21 C.F.R. §§ 102.5(b). But cheese is not a characterizing ingredient of the product. It likely would be a characterizing ingredient of "Cheese Pizza Rolls," as is true of strawberries in strawberry shortcake and peanuts in peanut butter. Or, perhaps, "Mixed Berry" in "Mixed Berry Soft Baked

12

Breakfast Bars" and "Ripe Strawberry" in "Ripe Strawberry Soft Baked Breakfast Bars." *Cf. Harris v. Kashi Sales, LLC*, --- F. Supp. 3d ---, 2022 WL 2390933, at **3–4 (N.D. Ill. July 1, 2022); *Johnston v. Kashi Sales, LLC*, --- F. Supp. 3d ---, 2022 WL 4103973, at **7–8 (S.D. Ill. Sep. 8, 2022) (reasonable consumer might expect that those were, in fact, ingredients, and that those ingredients predominated over others). But Smith didn't buy "Cheese Pizza Rolls;" she bought "Pizza Rolls" with "Cheese" as a "Natural[] Flavor[]." [1] ¶ 1. Cheese therefore wasn't a characterizing ingredient, and there was no violation of public policy in the failure to disclose the percentage of real cheese.

Smith next takes issue with the box's "Naturally Flavored" labeling. She says it isn't sufficient to overcome the misleading impression created by omitting the percentage of cheese. [1] ¶¶ 32–34; [22] at 16. But the omission of that percentage didn't create a misleading impression, and defendant wasn't required to include the percentage of cheese, as explained above. Nor was the layout of "Naturally Flavored" noncompliant. [22] at 16. Smith says the "flavor designation" must be adjacent to the name to the food. [22] at 16. "Cheese" isn't the name of the food, so "Cheese Naturally Flavored" doesn't cut it, she says. [22] at 16. The regulation on which Smith relies, however, only requires adjacent labeling if the food is "commonly expected" to contain a characterizing ingredient (e.g., strawberry in strawberry shortcake), and either 1) has natural flavor derived from that ingredient and an insufficient amount of characterizing ingredient to "independently characterize" the food, or 2) doesn't contain the ingredient at all. 21 C.F.R. § 101.22(i)(1)(i). In that case, "natural" may

13

immediately precede the name of the characterizing flavor and "flavored" must immediately follow the name, e.g., "natural strawberry flavored shortcake" or "strawberry flavored shortcake." *Id.* "Pizza Rolls" aren't expected to contain a characterizing food ingredient, so there's no requirement to label the product "(Natural) Cheese Flavored Pizza Rolls."

Plaintiff next claims that natural flavor can't be used to simulate the flavor of cheese. [22] at 16–17. This misreads the relevant regulation, which provides that a standardized cheese conforms to the definitions and requirements in the regulations, even when it is spiced or flavored. In addition, 21 C.F.R. § 133.193(a):

> [A] spiced and/or flavored standardized cheese shall contain one or more safe and suitable spices and/or flavorings, in such proportions as are reasonably required to accomplish their intended effect: *Provided,* That, no combination of ingredients shall be used to simulate the flavor of cheese of any age or variety.

In other words, one cheese can't simulate the flavor of another cheese: a Monterey Jack can't pretend to be a Gouda. That's not at issue here, so 21 C.F.R. § 133.193(a) is inapplicable.

Finally, Smith says General Mills violated federal regulations by failing to disclose on the front label the presence of imitation cheese. [1] ¶¶ 36–40; [22] at 17. But the relevant regulation, 21 C.F.R. § 101.3(e), only requires disclosure of an imitation food on the product's label—not specifically on the front of the product. Totino's ingredient list discloses the presence of imitation cheese, [1] ¶ 1, and therefore complies with the regulation.

Smith's noncompliance arguments fail, so she cannot make out an unfair-conduct claim. Her Illinois Consumer Fraud Act claim is dismissed without

14

prejudice. *See Saint Anthony Hosp. v. Eagleson*, 40 F.4th 492, 517 (7th Cir. 2022) (district court granting motion to dismiss must grant leave to amend complaint "[u]nless it is *certain* from the face of the complaint that any amendment would be futile") (citation and quotation omitted). Because I accept Smith's representation that she is not seeking to impose a labeling requirement different than the one required by federal law, I do not reach the affirmative defense of preemption, but simply conclude that she has not stated a claim under ICFA.

**B.     Common-Law Claims**

*1.     Warranty Claims*

Smith brings three warranty claims. The first is a state-law express warranty claim (presumably under 810 ILCS 5/2-313); the second is an implied warranty of merchantability/fitness for a particular product claim (presumably under 810 ILCS 5/2-314–15); the third is a general claim of a warranty under the federal Magnuson–Moss Act, 15 U.S.C. §§ 2301, *et seq.* [1] ¶¶ 94–109.

Under Illinois law, a buyer who discovers a breach of warranty must notify the seller "or be barred from any remedy." 810 ILCS 5/2-607(3)(a). Buyers are required to give notice to encourage curing the defect without a lawsuit. *See Connick v. Suzuki Motor Co., Ltd.*, 174 Ill.2d 482, 495 (1996); U.C.C. § 2–607. The Magnuson-Moss Warranty Act incorporates state-law notice requirements, so if plaintiff's notice is insufficient under Illinois law, it's also insufficient under federal law. *See Perona v. Volkswagen of Am., Inc.*, 292 Ill.App.3d 59, 65 (1st Dist. 1997) (citing *Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1012 (D.C. Cir. 1986)); *In re Rust-Oleum Restore Mktg.,*

15

*Sales Pracs. & Prods. Liab. Litig.*, 155 F. Supp. 3d 772, 799 (N.D. Ill. 2016) (citations omitted).

Smith says she fulfilled the notice requirement by filing suit, [22] at 19, but that's a nonstarter. Unless a plaintiff has suffered personal injury from a product defect, filing suit isn't adequate notice. *See Connick*, 174 Ill.2d at 495. Plaintiff's warranty claims are dismissed with prejudice for insufficient notice.[7]

    2.    *Negligent Misrepresentation*

To state a claim for negligent misrepresentation, Smith must allege that (1) defendant had a duty to communicate accurate information; (2) defendant made a false statement of material fact to her; (3) defendant carelessly or negligently failed to ascertain the truth of that statement; (4) defendant made the statement intending to induce Smith to act; (5) Smith acted in reliance on the truth of that statement; and (6) Smith suffered damage due to that reliance. *First Midwest Bank, N.A. v. Stewart Title Guar. Co.*, 218 Ill.2d 326, 332 (2006) (citations omitted); *see Kemper/Prime Indus. Partners v. Montgomery Watson Americas, Inc.*, 487 F.3d 1061, 1064 (7th Cir. 2007).

Smith hasn't shown that General Mills made a false statement to her, as discussed above. What's more, because Smith alleges only economic loss (paying more for Totino's than she would have if she'd known their actual contents), Illinois law

---

[7] The statute and U.C.C. provide, "Where a tender has been accepted…the buyer must within a reasonable time after he discovers or should discovered any breach notify the seller of breach or be barred from any remedy." 810 ILCS 5/2-607(3)(a); U.C.C. § 2-607(3)(a). That language means that failing to provide notice, even once and even if notice could be provided before the filing of an amended complaint, makes amendment futile because Smith is barred from any remedy for a breach of warranty. I therefore dismiss with prejudice.

bars her from recovering under tort theories of strict liability, negligence, and innocent misrepresentation. *Moorman Mfg. Co. v. Nat'l Tank Co.*, 91 Ill.2d 69, 91 (1982). To recover for economic loss, she'd have to rely on contract law instead. *Id.* at 86, 91–92.

There's an exception to the economic-loss rule, and Smith invokes it. [22] at 20. A plaintiff alleging only economic loss can recover under tort law for professional-malpractice claims, assuming the defendant's work product is intangible. *See Congregation of the Passion, Holy Cross Province v. Touche Ross & Co.*, 159 Ill.2d 137, 156–65 (1994). The theory is that the economic-loss doctrine only bars recovery in tort for breach of a contractual duty, but not breach of a duty that exists independently of a contract (e.g., the duty to "observe reasonable professional competence"). *See id.* at 164. That exception doesn't apply here. General Mills is not a member of a skilled profession responsible for providing advice, and Totino's Pizza Rolls are tangible objects. If Smith has a claim against General Mills, her remedy must come from contract law or consumer-protection statutes. Her claim for negligent misrepresentation is dismissed with prejudice.

3. *Fraud*

To a state a claim for common-law fraud, Smith must sufficiently allege that General Mills made a false statement of material fact that it knew to be false and intended for that statement to induce consumers to act. *Connick*, 174 Ill.2d at 496. She must also allege that she acted in reliance on the statement and was damaged from that reliance. *Id.* Smith has failed to plausibly allege a false statement, so her claim for fraud is dismissed without prejudice.

17

  4. *Unjust Enrichment*

Unjust enrichment isn't a separate cause of action, but instead a "condition brought about by fraud or other unlawful conduct." *Vanzant*, 934 F.3d at 740. A claim for relief based on unjust enrichment is therefore "tied to the fate" of the underlying substantive claim. *Id.* Because Smith hasn't adequately alleged that General Mills engaged in improper conduct, her unjust-enrichment claim is dismissed without prejudice.

  5. *Injunctive Relief*

Because Smith has failed to allege a plausible claim for relief, her request for injunctive relief is similarly dismissed without prejudice.

**IV. Conclusion**

General Mills's motion to dismiss, [18], is granted. Smith's negligent-misrepresentation claim and breach-of-warranty claims are dismissed with prejudice. Her ICFA, common-law fraud, and unjust-enrichment claims are dismissed without prejudice. Plaintiff has leave to file an amended complaint by 3/24/2023. If an amended complaint is not filed, this dismissal will automatically convert to a dismissal with prejudice and final judgment will be entered.

ENTER:

                _____
                Manish S. Shah
                United States District Judge

Date: March 3, 2023